UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PETER AURIGEMMA,<br>    *Plaintiff*, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COSTO WHOLESALE<br>CORPORATION,<br>    *Defendant*. | ) | 3:18-CV-1719 (OAW) |
| | ) | |
| | ) | |
| | ) | |

**OMNIBUS ORDER**

**This action** is before the court upon the parties' seventeen motions in limine filed

along with their joint trial memorandum.  ECF No. 58.  Defendant filed 12 motions, and

Plaintiff filed five.  Two are dueling motions, and some of the motions contain the same

arguments with respect to different pieces of evidence, so while there are 17 motions,

there are fewer issues presented.  Where sensible, this order discusses multiple

motions at once.  Both parties filed responses to the opposition's motions in limine.

There were no replies filed. The court has reviewed the motions and any responses

thereto and is thoroughly apprised in the premises.


I.      **BACKGROUND**[1]

On or about October 29, 2016, Plaintiff was shopping at a Costco in Brookfield,

CT.  ECF No. 1 at 2.  In the store that day was a display of paper towels laid out on a

pallet, from which shoppers could select their own packages.  *Id.*  As Plaintiff removed a

---

[1] All the following facts are derived from Plaintiff's Complaint and as such are allegations.

package of paper towels from the display pallet, he was struck in face by a falling steel bar.[2]  *Id.*  There was no warning to shoppers to beware of falling steel bars.  *Id.* at 3.

Plaintiff alleges he suffered from both musculoskeletal and neurological injuries as a result of the incident at Costco ("Costco Incident"), including irreversible brain damage, headaches, changes in mood and behavior, facial drooping caused by nerve and muscle damage, and loss of some digital dexterity due to neurological deficiencies. *Id.* at 4.  He has had to have an unspecified number of surgeries, several tests and treatments, and physical therapy to treat his injuries.  *Id.*  Additionally, he was prescribed non-steroidal anti-inflammatory drugs to treat his injuries, which in turn caused him to suffer from rectal bleeding.  *Id.* at 5.

Plaintiff initiated the instant action on October 16, 2018, asserting two claims against Defendant: premises liability (Count One) and mode-of-operation liability (Count Two).  He is seeking monetary damages.

Neither party submitted a dispositive motion, and the matter is now ready for trial. Jury selection is scheduled for January 19, 2023.

## II.   LEGAL STANDARD

It is well-settled that federal district courts have inherent authority to manage trials.  *Luce v. United States*, 469 U.S. 38, 41 (1984).  Part of managing trials is addressing evidentiary issues through motions in limine "to aid the trial process by enabling the [c]ourt to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or

---

[2] The parties refer to this item as a steel bar, a steel rod, and a safety bar.  The object is a part of the metal shelving used in the Brookfield Costco.  This order will refer to the item in question as a steel bar.

interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). A ruling on a motion in limine is subject to change as the case unfolds at trial, particularly if the actual evidence offered differs from what was contained in the original proffer. *Luce*, 469 U.S. at 41–42. "Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling." *Id.* "Evidence should be excluded on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." *Byrne v. Yale Univ., Inc.*, No. 3:17-CV-1104 (VLB), 2020 WL 5258998, at *2 (D. Conn. Sept. 3, 2020).

## III.   DISCUSSION

Under Connecticut law, a business owner owes its invitees a duty to keep its premises in a reasonably safe condition. *Baptiste v. Better Val–U Supermarket, Inc.*, 262 Conn. 135, 140, 811 A.2d 687 (2002). To carry a claim that a business owner has breached that duty, a plaintiff must show "(1) the existence of a defect, (2) that the defendant knew or in the exercise of reasonable care should have known about the defect and (3) that such defect had existed for such a length of time that the [defendant] should, in the exercise of reasonable care, have discovered it in time to remedy it." *Bisson v. Wal-Mart Stores, Inc.*, 184 Conn. App. 619, 628, 195 A.3d 707, 714 (2018) (alteration in original).

### a.  Affirmative Act Rule

The affirmative act rule is a means by which a plaintiff can satisfy the second element. The rule permits an inference of notice where the defendant business or its employees created the hazardous condition which gives rise to the claim. *DiPietro v.*

*Farmington Sports Arena, LLC*, 306 Conn. 107, 123, 49 A.3d 951, 960 (2012).  The evidence giving rise to the inference can be circumstantial, but the evidence must show that the defendant "knew or should have known of the dangerous condition because it was a foreseeably hazardous one that the defendant itself created."  *Id.* at 124.

Defendant argues that the affirmative act rule is inapplicable to this case, and that the jury should not be instructed as to the rule, because there is no evidence that Defendant created the hazardous condition that led to Plaintiff's injury.  More specifically, Defendant argues that there is no evidence that it was a Costco employee who placed the steel bar in a dangerous location.

Defendant goes on to state, however, that there is conflicting testimony regarding what happened just before the bar fell.  Defendant asserts that Plaintiff told the General Manager of the store immediately after the accident that he reached underneath a steel shelf to grab a package of paper towels.  It is not clear what the conflicting factual assertion is, but Defendant recognizes there is a factual dispute as to how the incident occurred.

Plaintiff responds that Defendant's argument goes to the sufficiency of the evidence, not the admissibility, and determining the sufficiency of evidence is not an appropriate use of a motion in limine.  Plaintiff also argues that a jury could reasonably find, based on circumstantial evidence, that Defendant was responsible for the hazardous position of the steel bar.

The court denies this motion without prejudice to its being renewed later. Plaintiff's point is well-taken that Defendant is not objecting to the admissibility of any

particular piece of evidence in this motion, and whether a jury instruction should be given in relation to the rule will depend upon what evidence is produced at trial.

### b. Mode of Operation

Defendant has filed a motion asking the court to exclude any evidence relating to the mode of operation doctrine because, according to Defendant, it is inapplicable to the current case. Plaintiff responds that Defendant is attempting to improperly use a motion in limine for dispositive relief, as Plaintiff's second claim is a mode of operation claim.

There is a preliminary issue here which the parties do not clearly address.[3] Plaintiff asserts a separate claim for "Mode of Operation." However, under Connecticut law, "the mode of operation rule is not a separate cause of action. Rather it is a manner in which the notice requirement is addressed to determine liability in premises liability cases." *Jimenez v. Stop & Shop Supermarket Co., LLC*, No. CV095004516S, 2009 WL 2231696, at *2 (Conn. Super. Ct. June 23, 2009) (quoting *Berry v. Staples Connecticut, Inc.*, No. CV085018858, 2008 WL 4779745, at *2 (Conn. Super. Ct. Oct. 9, 2008)); *see also Dunn v. Suburban Cont. Cleaning, Inc.,* No. FSTCV196040499S, 2021 WL 3832017, at *2 (Conn. Super. Ct. Aug. 3, 2021) ("It is well settled that the 'mode of operation' rule does not state a separate cause of action."). However, Defendant has not (at any point) filed a motion to dismiss Count Two, and even now does not argue that Count Two should be stricken.

Federal Rule of Civil Procedure 12(f) grants courts the authority to sua sponte strike portions of a pleading that are "redundant, immaterial, impertinent, or scandalous . . . ." *See also Leonhard v. United* States, 633 F.2d 599, 609 n.11 (2d Cir. 1980) ("The

---

[3] Defendant recognizes this issue elsewhere in the joint trial memorandum, but without any supporting legal authority or even a clear argument or request for any relief.

district court has the power to dismiss a complaint sua sponte for failure to state a claim."). Count Two is clearly redundant because it simply is a more specific version of the same claim asserted in Count One.  The court therefore must strike Count Two.

Turning to the main issue presented in this motion, the "mode of operation" rule, under Connecticut law, provides an exception to the element of notice in a traditional premises liability claim.  *See Fisher v. Big Y Foods, Inc.*, 298 Conn. 414, 419, 3 A.3d 919, 923 (2010).  The rule "evolved in response to the proliferation of self-service retail establishments."  *Kelly v. Stop & Shop, Inc.*, 281 Conn. 768, 778, 918 A.2d 249, 256 (2007).  The rule allows a plaintiff to show that "the owner of a self-service retail establishment reasonably may be deemed to have constructive notice of dangerous, transitory conditions that are likely to occur due to the manner in which the store is operated."  *Id.* at 780.

However, "the exception [to the notice element] is meant to be a narrow one." *Fisher v. Big Y Foods, Inc.*, 298 Conn. 414, 437 Conn. (2010).  Further, self-service merchandising itself cannot be the mode of operation at issue, or else an entire establishment would become a "zone of risk."  *Id.* at 424.  In fact, Connecticut's Appellate Court has outlined a three-factor test to determine whether the mode of operation rule applies: "(1) the defendant must have a particular mode of operation distinct from the ordinary operation of a related business; (2) that mode of operation must create a regularly occurring or inherently foreseeable hazard; and (3) the injury must happen within a limited zone of risk."  *Bisson*, 184 Conn. App. at 628.

To avail himself of the rule, Plaintiff must show the Defendant's mode of operating its business "gives rise to a foreseeable risk of injury to customers and that

[his] injury was proximately caused by an accident within the zone of risk." *Id.* at 791. Defendant may in turn rebut Plaintiff by showing that it did exercise reasonable care. *Id.*

Plaintiff argues that Defendant has a mode of operation whereby it displays paper towels in a particular way, and that the way in which Defendant stacks the paper towels causes a foreseeable risk of causing an injury such as Plaintiff's. Defendant argues that the mere stacking of paper towels cannot satisfy the mode of operation rule, and Costco does not have a mode of operation that includes leaving steel bars in precarious positions.

A review of relevant case law leads the court to conclude that Defendant's is the stronger position. *Kelly* involves a business that sold salad from a self-serve salad bar; its plaintiff fell after slipping on a piece of lettuce that had dropped to the floor, and the mode of operation rule was applied. 281 Conn. 768. In that case, the Supreme Court of Connecticut noted that the store's manager testified that customers regularly dropped salad bar items on the floor, creating a "precarious" environment around it. *Id.* at 793. Connecticut's Supreme Court also has illustrated the rule's applicability by referencing[4] *White v. Safeway, Inc.*, Court of Appeals of Washington, Docket No. 35960–0–II, 2008 WL 501472, *2, 2008 Wash.App. LEXIS 456, *4 (February 26, 2008), a case out of the State of Washington. In *White v. Safeway*, the mode of operation rule was applied to a store that sold self-serve roast chicken from a cart, around which grease spilled and caused someone to slip, but its court held that "a plaintiff who slips and falls in a grocery store cannot survive summary judgment by merely raising the inference that the substance causing her fall came from within the store; rather, the plaintiff must show

---

[4] *See Fisher v. Big Y Foods*, 298 Conn. 414, 437 (2010).

that such spills were foreseeable *in the specific area where she fell*."  *Id.* at 2008 WL
501472 *2 (emphasis added).  Thus, the circumstances in *Kelly* and in *White* are distinct
from those in the case before this court.  In the present case, there is nothing about the
display of paper towels itself that should have led Defendant to know that an injury such
as Plaintiff's was foreseeable, particularly within that specific area of the store.  Rather,
Defendant's general use of heavy-duty shelving is what Plaintiff appears to challenge,
and the use of such shelving is not a distinct mode of operation.

　　　The case at bar seems more analogous to *Hill v. OSJ of Bloomfield*, 200 Conn.
App. 149 (2020), in which a plaintiff had a box fall on her head from a high shelf while
employees were stocking on the other side of the same aisle.  The *Hill* court determined
that she could not satisfy the three-part mode of operation test because the store's
stacking of boxes was not distinct from the ordinary operation of a related business and
did not result in a regularly-occurring or inherently-foreseeable hazard.   200 Conn. App.
at 159-60.  Though the court did not define "related business," common experience and
reason would lead one to conclude that many retail businesses keep overstock on
higher shelves.  With respect to foreseeable hazards, the court noted the absence of
any evidence that a similar accident previously had occurred, and explained that the
mere potential of a future hazard "alone does not give rise to a regularly occurring or
inherently foreseeable hazard."  *Id.* at 160.

　　　The court finds that the mode of operation rule is inapplicable to the present
case, and grants Defendant's motion to bar evidence which pertains to the rule.[5]

---

[5] Of course, evidence which pertains to the rule still might be admissible for other purposes.

### c.  Other Incidents

Defendant seeks to prohibit Plaintiff from introducing evidence of other prior incidents at its store, arguing that those incidents are prejudicial and not sufficiently similar to be relevant.  Defendant asks that, if any such evidence is to be introduced, it be done through an offer of proof outside the presence of the jury.

Plaintiff rightly responds that Defendant fails to point to any specific incidents of which it wishes to exclude mention.  Plaintiff states that he has no intention of introducing any prior incident that does not satisfy the requirements of Connecticut law. *See Colon v. Metro-N. Commuter R.R. Co.*, No. 3:13-CV-00325 (JAM), 2017 WL 3283187, at *2 (D. Conn. Aug. 2, 2017) ("[E]vidence of prior accidents may be admitted at trial only if the proponent establishes their relevance by showing that they occurred under the same or substantially similar circumstances as the accident at issue.").

The court denies this motion without prejudice to its being renewed at trial. Plaintiff is instructed, though, to present an offer of proof to the court before introducing any evidence of prior incidents so that a determination may be made as to whether the prior incidents are sufficiently similar to the Costco Incident.

### d.  Res Ipsa Loquitur

The applicability of the res ipsa loquitur doctrine is one of the issues upon which the parties submitted dueling motions.  Plaintiff asks the court to find that the doctrine is applicable, and Defendant asks the court to find that it is not.

In Connecticut, the doctrine of res ipsa loquitur "allows the jury to infer negligence based on the circumstances of the incident even though no direct evidence of negligence has been introduced."  *Giles v. City of New Haven*, 228 Conn. 441, 446,

636 A.2d 1335, 1337 (1994).  Therefore, it is a method of proving premises liability and not simply a means of satisfying any of its elements.  There are two conditions that Plaintiff must show in order for the doctrine to be applicable. "First, the situation, condition or apparatus causing the injury must be such that in the ordinary course of events no injury would have occurred unless someone had been negligent. Second, at the time of the injury, both inspection and operation must have been in the control of the party charged with neglect." *Barretta v. Otis Elevator Co.*, 242 Conn. 169, 173–74, 698 A.2d 810, 812 (1997).

The defendant argues that exclusive control is a necessary element of res ipsa, citing the 1933 case of *Jump v. Ensign Bickford* in its Motion to Preclude, ECF No. 58 at 301, but modern jurisprudence explains that it is not required.  *Giles v. New Haven,* 228 Conn. 441, 455, 636 A.2d 1335, 1339 (1994).  Defendant references *Giles* in its motion, *see* ECF no. 58 at 298, 302, but fails to mention the following important passage: "If the jury could reasonably find that the defendant's control was sufficient to warrant an inference that the defendant was more likely responsible for the incident than someone else, ***even in the absence of proof of absolute exclusivity and control over the instrumentality by the defendant,*** the trial court must allow the jury to draw that inference." *Giles v. New Haven*, 228 Conn. 441, 450–51 (1994) (citation omitted) (emphasis added).  Defendant also ignores, "The plaintiff's actual use of the instrument, therefore does not, in and of itself, bar application of [res ipsa loquitur]." *Id.* at 448–49. The *Giles* court also held, **"While exclusivity may eliminate other causes, the critical inquiry is not whether the defendant's control was exclusive, but whether that defendant was responsible for the injury."** *Id. at* 451 (emphasis added).

10

*Giles* involved an elevator operator who alleged that she was injured due to a faulty compensation chain that spanned twelve stories within a building, and that was located under the elevator's cab.  In that case, the plaintiff's potential for contributory negligence was examined in assessing whether res ipsa should apply, and the Supreme Court of Connecticut clearly established that "res ipsa loquitur now applies even if the plaintiff's fault contributed to the injury."  *Id. at* 455.  To the extent that Defendant argues in the case at bar that "the doctrine does not apply . . . [because the] plaintiff cannot exclude [the] plaintiff's own negligence as a cause of the accident", Defendant noticeably misstates the law.  Further, Plaintiff does not have to rule out all other *possible* explanations for his injury in order for res ipsa to apply in this case, he only must prove facts that allow the jury to find it more probable than not that Defendant's negligence caused such injury.  *Id.* at 447–48.  At the same time, "res ipsa . . . does *not* apply if there are other reasonable explanations for the plaintiff's accidental injury."  *Giles*, 228 Conn. 448.

Plaintiff avers that he will introduce evidence showing both elements of a res ipsa claim and objects to Defendant's competing motion, arguing that Defendant asks the court to preclude a legal theory rather than to exclude inadmissible evidence. Defendant asserts that Plaintiff cannot make the prerequisite showing because there is no evidence that some third party did not place the steel bar in the hazardous position, and there is some evidence that Plaintiff himself did something to cause the bar to fall.

The court denies both motions without prejudice to renewal.  While presently it is clear that evidence adduced at trial might well satisfy the requirements necessary for the court to instruct the jury on the doctrine of res ipsa loquitur, it is premature for the

court essentially to rule on a request to charge (or, in Defendant's case, *not* to charge).

Still, even though res ipsa loquitur might be applicable in this case, the court will be

careful not to unnecessarily complicate its explanation to the jury.  Discussion of its

foundational principles (that circumstantial evidence can be considered, that

contributory negligence does not bar recovery, and the like) need not provide jurors with

lessons in Latin nor in the historical decline of the importance of "exclusive control."

The parties showed at the pretrial conference that they are capable of explaining the

facts salient to liability in fewer than five sentences – and the court mentions this as a

compliment rather than as a criticism; this case's factual simplicity can be reflected both

in closing arguments and in the jury charge, allowing the jurors to deliberate without

confusion.

### e.  Spoliation of Evidence

Both parties have filed competing motions in limine on the issue of spoliation.

Plaintiff seeks an instruction directing the jury that they may form an adverse inference

against Defendant for Defendant's failure to produce relevant evidence, whereas

Defendant seeks to prevent Plaintiff from introducing any evidence of alleged spoliation.

The Costco Incident occurred on or about October 29, 2016.  On November 8,

2016, Plaintiff's attorney sent a letter to Defendant requesting that certain pieces of

evidence be preserved.  One of the items on that list was the actual steel bar that struck

Plaintiff.  However, it appears that the bar immediately was returned to regular  use, and

that it could not be located.  Defendant did provide safety inspection documents,

pictures of the area where the accident occurred, and incident reports from the accident.

At the pretrial conference in this action on January 5, 2023, Plaintiff asked the court to

also permit the instruction with respect to video footage of the Costco Incident, which was not preserved.

### i. *Steel Bar*

Generally speaking, in federal courts, an adverse inference may be drawn against a party who has lost or destroyed evidence if three things are shown: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the [evidence was] destroyed 'with a culpable state of mind;' and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Dupee v. Klaff's, Inc.*, 462 F. Supp. 2d 244, 248 (D. Conn. 2006) (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir.2002).

Plaintiff argues that the first requirement is indisputably satisfied because the Costco General Manager should have known from the time of the accident that the bar would be relevant to a potential legal action. He further asserts that the second requirement is satisfied because the General Manager intended to dispose of the bar, even if he did not do so for any nefarious reason. And finally, he asserts that the third requirement is satisfied because he never had an opportunity to inspect the bar, which would have helped him determine how it fell and why, and whether the bar was defective or damaged or improperly installed is relevant to his case.

Defendant contends that it had no duty to preserve the bar before it received Plaintiff's attorney's letter. Furthermore, Defendant argues that although the General Manager did admit to putting the bar back into general circulation, he did not do so with a culpable state of mind, though they make no further argument on this point. And

finally, Defendant argues that Plaintiff cannot show that the bar is relevant to his claims, since he has not stated a product liability claim.

With respect to the first element, an obligation to preserve evidence "usually arises when a party has notice that the evidence is relevant to litigation ... but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation."  Dupee, 462 F. Supp. at 249.  This obligation to preserve evidence can arise before any contact is made by a plaintiff or his attorney about litigation.  See, e.g., In re Semrow, No. 3:09-CV-1142 VLB, 2011 WL 1304448, at *3 (D. Conn. Mar. 31, 2011) (finding that the defendant estate "should have known of the evidence's potential relevance to future litigation" since a fatality on a boat "made litigation likely if not certain"); Cortes v. Peter Pan Bus Lines, Inc., 455 F. Supp. 2d 100, 103 (D. Conn. 2006) (finding that the defendant bus line should have kept a bus driver's incident report about a slip-and-fall for a reasonable time "even though it may not have been on notice of a lawsuit or personal injury claim.").  The court finds that an accident such as the Costco Incident, where an individual was struck in the face with a steel bar, is a serious enough incident that one could reasonably foresee litigation, even before one knows the extent of the injuries resulting from the incident.

With respect to the second requirement, a culpable state of mind generally can be established through ordinary negligence.[6]  See Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 108 (2d Cir. 2002).  And once a duty to preserve evidence has been established, "any destruction of documents is, at a minimum, negligent."  Doe v. Norwalk Cmty. Coll., 248 F.R.D. 372, 379 (D. Conn. 2007) (quoting

---

[6] As will be discussed below, this is no longer the standard for electronically-stored information.  Rella v. Westchester BMW, Inc., No. 7:16-CV-916 (JCH), 2019 WL 10270223, at *3 (D. Conn. Sept. 30, 2019).

*Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 220 (S.D.N.Y.2003)).  Therefore, the court finds that the second element also is satisfied.

However, with respect to the third requirement, the relevance of the steel bar to Plaintiff's claims presently is unclear.  Therefore, the court cannot at this point find that spoliation occurred.

### ii.  *Video footage*

Rule 37 of the Federal Rules of Civil Procedure was amended in 2015 to clarify the court's authority when a party fails to take reasonable steps to preserve electronically-stored information.  It permits a court, "upon finding prejudice to another party from loss of the information," to "order measures no greater than necessary to cure the prejudice . . . ."  Fed. R. Civ. P. 37(e).  And, if the court finds that the party who failed to preserve the information "acted with the intent to deprive another party of the information's use in the litigation," the court may presume that the lost information was unfavorable to the party that failed to produce, instruct the jury that it may or must presume the information was unfavorable to that party, or resolve the action in the opposing party's favor (through dismissal or a default judgment).  *Id.*

Plaintiff orally asked without articulation that his motion in limine be "expanded" to cover the video footage as well.  Defendant nevertheless responds that Plaintiff has failed to show that there was a duty to preserve the footage, that Plaintiff is prejudiced by the lack of footage, or that Defendant acted with the requisite intent.

Even if the court were to find, for the reasons discussed in relation to the steel bar, that Defendant did have a duty to preserve the video footage, the court cannot find, based on the record before it, that Defendant acted with the requisite culpable intent or

that any prejudice inured to Plaintiff.  Therefore, it is not clear that spoliation occurred with respect to the video footage, either.

The court denies Plaintiff's motions with respect to spoliation, but without prejudice to renewal at trial.  Given that this denial is without prejudice, though, the court also denies Defendant's motion with respect to spoliation.  Plaintiff may produce evidence which may support its position, subject to Defendant's objection.  And though the court declines to approve an instruction on spoliation, Plaintiff is not foreclosed from arguing to the jury that they can consider *whether* Defendant failed to preserve the video evidence because it would have been detrimental to the defense.  Still, the specific instruction sought by Plaintiff is not warranted where Defendant argues that no video depicted the area where Plaintiff alleges to have been injured (a point not disputed by Plaintiff), thus there is no justification for the court to instruct the jury that video, had it been retained, *would have been* helpful to the plaintiff in this instance.

### f.  Golden Rule/Reptile Rule

Defendant has filed a motion asking the court to preclude Plaintiff from making arguments at trial that come from the "Golden Rule" or "Reptile Theory" because such theories are irrelevant and prejudicial.  Plaintiff objects to Defendant trying to limit the types of argument he can make at trial, and asserts that Defendant has mischaracterized the theories, which are not prejudicial and which are allowed in this circuit.

"Reptile Theory" is a method of persuading jurors to find in a plaintiff's favor by invoking the primal (or reptilian) part of jurors' minds, which drives them to act to protect themselves or their community.  *Baxter v. Anderson*, 277 F. Supp. 3d 860, 861 (M.D.

16

La. 2017).  The "Golden Rule" is a strategy of persuasion which asks a juror to put themselves in a party's position.  *Barrella v. Vill. of Freeport*, 714 F. App'x 78, 80 (2d Cir. 2018).

The court denies this motion without prejudice to renewal at trial.  With respect to the "Golden Rule" arguments, the acceptability of those arguments is already well-settled in this circuit: they are only prohibited in the context of damages, such that it is allowable for an attorney to ask a jury to put themselves in a plaintiff's position to determine whether an action was reasonable, but an attorney may not ask a jury to put themselves in a plaintiff's position and award damages in the amount they would wish to receive.  *Id.* (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1289 (2d Cir. 1990)); *see also Burrage v. Harrell*, 537 F.2d 837, 839 (5th Cir. 1976).  And with respect to the "Reptile Theory" arguments, the court acknowledges that arguments should not inappropriately incite a jury to make a determination on an improper basis, but it is not clear that all "Reptile Theory" arguments would run afoul of that maxim.  The court therefore will not proscribe them completely at this point.

### g.  Expert Witnesses

The parties make a number of objections dealing with experts, some of which raise the same or similar arguments with respect to different experts.  The court will address those arguments by issue, not motion, in the interest of efficiency.

### i.  Motions to Exclude Testimony for Lack of Causal Relation

Defendant moves to exclude the testimony of three doctors because their expert reports fail to causally relate Plaintiff's injuries or their treatment of Plaintiff's injuries with the Costco Incident.  Plaintiff already has disclosed all three doctors as experts, and he

has indicated that they will testify in accordance with their reports.  The doctors in question are:

- Dr. Elie Abemayor, who treated Plaintiff for rectal bleeding in August and September of 2017,

- Dr. Giovanni Angelino, who treated Plaintiff for neck pain from July 2018 through April 2019, and

- Dr. Billings Fuess, who treated Plaintiff for psychological ailments from October 2018 until October 2019.

Plaintiff concedes that in a case such as this one, under Connecticut law an expert must relate a plaintiff's injuries and treatment to an allegedly tortious incident, but he contends that this causal connection need not be established through each individual expert.  Plaintiff acknowledges that it is his burden to show causation at trial.

Neither party cites, and the court has not found, caselaw that squarely addresses the question of whether *each* expert in a premises liability suit must be able to testify to a causal relation between a plaintiff's injury and the accident at issue, but analogous cases (such as medical malpractice and worker's compensation cases) support Plaintiff's position that an expert generally does need to establish the causal relationship, but the causal relationship may be established with expert testimony in combination with other evidence.  *See, e.g., Dreisch v. Burkey*, No. TDCV095004834S, 2011 WL 5084313, at *1 (Conn. Super. Ct. Oct. 7, 2011) (noting in a personal injury case arising from a car accident that expert testimony is not required to establish causation where a medical condition is "obvious or common in everyday life" or where "plaintiff's evidence creates a probability so strong that a lay jury can form a reasonable

belief"); *Sapko v. State*, 123 Conn. App. 18, 29, 1 A.3d 250, 256 (2010), aff'd, 305

Conn. 360, 44 A.3d 827 (2012) (stating in the context of a worker's compensation suit

that a causal relation may be established by an expert medical opinion "considered

along with other evidence").

Accordingly, the court finds that each expert need not, alone, establish causation,

but may do so in combination with other evidence.  The court therefore denies the

motion without prejudice to its being renewed later.

### ii.  *Motion to exclude testimony for lack of required medical probability*

Defendant also moves to exclude the testimony of Dr. Angelino and Dr.

Abemayor for the additional reason that it is not based upon a reasonable degree of

medical probability.  Defendant does not expound upon this argument.

Plaintiff argues that expert testimony does not lack the requisite level of medical

probability simply because it does not say the words "reasonable medical probability."

*See Aspiazu v. Orgera,* 205 Conn. 623, 632, 535 A.2d 338, 342 (1987) ("Although we

approve generally of the 'reasonable medical probability' standard, we also note that no

'talismanic words' are mandatory.").  Plaintiff also argues that under Federal Rule of

Civil Procedure 26(a)(2)(B),[7] Dr. Angelino did not need to provide a report containing

any specific opinions, since he is testifying as Plaintiff's treating physician.  *See Barack*

*v. Am. Honda Motor Co.*, 293 F.R.D. 106, 108 (D. Conn. 2013) ("The party seeking to

use the treating physician does not, however, need to provide a written expert report

---

[7] Rule 26(a)(2)(B) states that any expert witness must provide a written report "*if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony.*"  (Emphasis added).

under Rule 26(a)(2)(B) because treating physicians are not 'retained or specially

employed to provide expert testimony in the case.'").[8]

The court denies this motion without prejudice to its being renewed later.  It is

unclear whether Dr. Angelino submitted a written report, and relatedly, the exact nature

of his proposed testimony, thus it impossible to state with certainty that his testimony

will lack reasonable medical probability.  In Connecticut, "[a]s long as it is clear that the

opinion of the expert is expressed in terms of probabilities, the opinion should be

submitted into evidence for a jury's consideration."  *Milliun v. New Milford Hosp.*, 129

Conn. App. 81, 100, 20 A.3d 36, 47 (2011), aff'd, 310 Conn. 711, 80 A.3d 887 (2013).

Defendant has not convinced the court that Dr. Angelino will be unable to do so.

### iii.   Motion regarding treatment for rectal bleeding

Defendant objects to any testimony from any doctor who treated Plaintiff for

rectal bleeding because Defendant believes that certain information in those doctors'

records actually shows that something else caused Plaintiff's bleeding.

The doctors in question here are:

- Dr. Elie Abemayor,[9]

- Dr. Peter McAllister, and

- Dr. Warren Bromberg.

Plaintiff responds that Defendant's argument goes to the weight of his evidence

and not the admissibility of it.

---

[8] The court gathers from this argument that Dr. Angelino did not provide an expert report.
[9] Defendant also objected to Dr. Abemayor's report not showing a causal connection between the bleeding and the incident and not being based upon a reasonable degree of medical certainty, as discussed above.

The court agrees with Plaintiff.  Defendant does not state an argument against the admissibility of these reports, and if information in the reports explains a different cause for Plaintiff's ailments, then Defendant may present that information to the jury. The court therefore denies this motion without prejudice to its being renewed later.

### iv.  Dr. Karen Postal's Disciplinary record

Defendant intends to call Dr. Karen Postal as its expert witness.  Dr. Postal is well-credentialed but she received an official reprimand from the Massachusetts Board of Registration of Psychologists in 2009 as a result of a complaint filed against her.[10] This is the only mar on Dr. Postal's professional record.

During Dr. Postal's deposition, Plaintiff's attorney asked her if she had "ever been censured in any way?"  She replied in the negative.  Defendant wants the court to prohibit Plaintiff from using that reply or the record of Dr. Postal's reprimand in his cross-examination of Dr. Postal, claiming that (1) it is inadmissible character evidence, (2) it is inadmissible extrinsic evidence, (3) it is not probative of Dr. Postal's truthfulness, (4) it is not actually a prior inconsistent statement, since "censure" is a specific disciplinary action in the doctor's field, and she has not been censured in that official sense, (5) it is not relevant, and (6) it is substantially more prejudicial than probative.

Plaintiff responds that the question clearly meant the colloquial definition of the term "censure," since the question was whether the doctor had been censured "in any way."  He also clarifies that he does not intend to use the record evidence to impeach Dr. Postal, but as a prior inconsistent statement.  He argues that, per Federal Rule of Evidence 613(b), Defendant will have the opportunity to rehabilitate Dr. Postal and allow

---

[10] The basis for the complaint is not relevant to these proceedings.

her to explain her prior answer.  Plaintiff asserts it is for the jury to determine whether her explanation is plausible.

It is not clear to the court in what context this issue may arise at trial.  Plaintiff asserts the fact of the reprimand will not be used for impeachment, but it is not clear what will be asked of Dr. Postal at trial, or whether she actually will give a statement inconsistent with her deposition testimony.  The court therefore denies this motion without prejudice to renewal at trial, but cautions that any line of questioning in this area should be limited, directly to the point, and brief.

### v. Dr. Peter McAllister's PowerPoint and payments from Allergan

One of Plaintiff's treating physicians, Dr. Peter McAllister, gave a PowerPoint presentation in 2017 about starting and maintaining a practice that does not rely on insurance payments.  In that presentation, Dr. McAllister recommends finding a revenue stream from a pharmaceutical company.  Dr. McAllister apparently also has received certain payments (up to about $80,000 per year, allegedly)[11] from Allergan, the pharmaceutical company that manufactures Botox.  Dr. McAllister has administered Botox injections to Plaintiff every three months for the past five years and presumably will continue administering the injections for the foreseeable future.

Plaintiff has filed two motions, one asking the court to prohibit Defendant from inquiring into these payments from Allergan, and the other asking the court to prohibit Defendant from introducing the PowerPoint as evidence.  Plaintiff argues that the payments and presentation are not relevant, and that if they are relevant, they are

---

[11] Defendant has filed a supplement to its response to this motion in limine which lists actual dollar amounts Dr. McAllister received in prior years.  In 2020, he received a little more than $80,000 from Allergan.  *See* ECF No. 66.

substantially more prejudicial than probative.  Furthermore, Plaintiff asserts that the presentation is inadmissible hearsay.

Defendant responds that the presentation is not hearsay because it is not offered for the truth of the matter asserted.  That is, the evidence isn't intended to show that securing pharmaceutical revenue streams actually is important to establishing a medical practice, but simply that Dr. McAllister believes in securing such revenue streams and that he did in fact secure such a revenue stream.  Furthermore, Defendant asserts that the payments and presentation are relevant to damages, since Plaintiff is claiming the Botox injections were treatments for injuries sustained in the Costco Incident, and because he is claiming as damages payments for those injections.  Defendant wishes to argue that the injections were not medically necessary.

The court denies Plaintiff's motion as to the presentation and the payments. Whether Dr. McAllister was prescribing the Botox injections for some improper purpose is relevant to whether they were medically necessary.  The fact that he advocates for doctors to accept consulting payments from pharmaceutical companies is relevant, and the jury should be left to determine the weight of that fact.  The same is true regarding the consulting payments from Allergan.  Still, any reference to the presentation should be extremely limited in time and scope.

### h. EZPass Statements

Plaintiff has filed a motion asking the court to preclude Defendant from introducing any evidence related to his EZPass statements because they are not relevant, and if they are relevant, they are substantially more prejudicial than probative. Specifically, Plaintiff argues that the statements only show that a particular EZPass

transponder went through a certain toll plaza at a specific time and date.  It does not indicate the vehicle that housed the transponder, or who was operating it.

Defendant responds that these issues already have been resolved by Magistrate Judge William Garfinkel.  On September 9, 2020, the parties attended a hearing in front of Judge Garfinkel to argue whether Plaintiff should produce EZPass statements in discovery, and he determined that Plaintiff should produce the records, but with certain limitations.  Specifically, he instructed Plaintiff to produce EZPass records from July 1, 2016, through December 31, 2018, that corresponded to Plaintiff's route to and from work.  *See* ECF No. 45.  Defendant wishes to use the records to counter Plaintiff's testimony that as a result of his injuries he is unable to drive at night.  Furthermore, Defendant argues that the information is not prejudicial at all, since it is not likely to lead the jury to make any determination upon an improper basis.

The court denies this motion without prejudice to its renewal at trial.  Plaintiff has failed to show that the EZPass records are either irrelevant or prejudicial.  The records are relevant to Plaintiff's claims about the extent of his injuries, and he is welcome to present an alternative interpretation of the data presented therein if he wishes.

### i. Defendant's Financial Condition

This is one of only two motions that are uncontested.  Defendant wishes to exclude any evidence regarding its financial condition as irrelevant.  Plaintiff has not filed any objection to the motion.

The court grants this motion.  Plaintiff has not objected, and "[e]vidence of wealth ... is generally inadmissible in trials not involving punitive damages."  *Tesser v. Bd. of Educ. of City Sch. Dist. of City of New York*, 370 F.3d 314, 318 (2d Cir. 2004) (quoting

*Reilly v. Natwest Mkts. Group Inc.*, 181 F.3d 253, 266 (2d Cir.1999)) (first alteration added).

### j. *Insurance*

This is the other motion which is uncontested.  Defendant moves the court to exclude any evidence as to its liability insurance coverage.  Plaintiff has not filed an objection to this motion.

The court grants this motion as well.  Plaintiff has not objected, and Federal Rule of Evidence 411 specifically disallows using evidence of liability insurance to show negligence.

## IV.   CONCLUSION

Accordingly, it is thereupon **ORDERED AND ADJUDGED** as follows:

   a. Count Two of the complaint hereby is **DISMISSED**.

   b. The court **GRANTS** Defendant's motion to bar evidence related to the mode of operation rule.

   c. The court **GRANTS** Defendant's motion to bar evidence dealing with its financial condition.

   d. The court **GRANTS** Defendant's motion to bar evidence dealing with its insurance coverage.

   e. All other motions in limine are **DENIED without prejudice** to renewal at trial.

**IT IS SO ORDERED** at Hartford, Connecticut, this 17th day of January, 2023.

                                            /s/

                              OMAR A. WILLIAMS
                              UNITED STATES DISTRICT JUDGE